WOOD (ORMSBEE v.).   See Case No. 10,-579.

## Case No. 17,961.

### WOOD v. PLEASANTS.

[3 Wash. C. C. 201.] [1]

Circuit Court, D. Pennsylvania.   April Term, 1813.

MARINE INSURANCE—DEVIATION ON VOYAGE—JUSTIFICATION.

1. An insurance was effected on the cargo of the Actress, from New York to New Orleans; and after she passed Havana, she returned to that port, on the plea of a deficiency of water, when, by order of the government, the cargo was landed and put into the custom-house stores; the vessel not being permitted to depart with her cargo. The American consul sold the cargo; and the plaintiff claimed, in this suit, to recover the amount of the loss sustained by the sale. The certificate of the collector of Havana, under the seal of his office, of the arrival of the vessel at that place for water, and that before permission to take it on board was given to the captain, he was obliged to stipulate that the cargo should be landed, the articles composing it being wanted for the use of the place, is not evidence, as the deposition of the collector to these facts should have been taken.

2. If the necessity produced by the want of water really and fairly existed, a sufficiency for the voyage having been taken on board at New York, and Havana was the nearest port, a deviation was justifiable.

Action on an open policy, dated 19th July, 1808, on the cargo of the ship Actress, at and from New York to New Orleans; 4,000 dollars subscribed; warranted American property. The plaintiff proved the neutrality of the ship and cargo, and the plaintiff's property in the same; that she sailed on the voyage insured, July 17th, with a sufficiency of provisions, and about 900 gallons of water, and in all respects well found. She passed the Moro Castle, in Havana, on the 9th of August, and had reached the 25th degree of north latitude, in the course to New Orleans, on the 19th; when it was discovered that the water of one cask had entirely leaked out, and so much of the other as to leave only 30 gallons remaining. In this situation, the captain, after a consultation with his officers and crew, determined to return to Havana, in order to obtain a supply of water; the distance to that place being shorter than to New Orleans, and the voyage more easily to be accomplished, on account of the current setting to the southward, and the wind being more favourable. They arrived at Havana on the 28th of August, when only two gallons of water remained. The next day, a government boat boarded the ship, and left an officer on board, who ordered the ship into harbour to be moored, declaring that she would not be permitted to sail, without discharging her cargo. The cargo was accordingly landed, by the orders of this officer, and placed in the warehouse of the

custom-house, on the 5th of October. The cargo was sold by the American consul, and the proceeds remitted to the plaintiff, leaving a loss, which is claimed in this suit. In order to introduce a certificate of the collector general of the customs at Havana, under the seal of his office, a deposition was read, proving the seal and signature of this officer; that such certificate is a document usually granted at his office; that no other seal is used to certify his acts, than the one affixed to this certificate; and that no other officer is authorized to grant such certificates. The certificate states the arrival of this ship at Havana, for the purpose of watering, which was granted by the governor; but that to carry this into effect, the captain was obliged to present himself to the intendant general of the royal armies and treasury, by whom not only the unloading, but also the sale of the whole cargo was decreed, on the 1st of October, on account of the market being in want of the articles of which it consisted.

This certificate was objected to, by Mr. Binney, for defendant, because the decree itself should be produced, certified by an officer having authority to authenticate it; this certificate and seal, not relating to any acts of the officer giving it, but to those of a different department, those of the intendant.

BY THE COURT. All that we know respecting this certificate is, that the officer who gave it, is authorized, and can alone grant such a one, according to the laws which prevail in the Island of Cuba. But are we bound, on that account, to receive it as evidence? We admit, that it is an authentic instrument; but still, it is only an ex parte certificate of a fact, which the officer who gave it was authorized to certify. But it is not the best evidence which the case admits of, because the deposition of the officer might have been taken; and it was important for the defendant to have had the privilege of cross-examining, particularly for the purpose of eliciting the true cause of the order of sale.

WASHINGTON, Circuit Justice, added, that although a witness had been examined to prove, that the Spanish verb, which in this certificate is translated "decreed," means also, "ordered, resolved, determined," and does not necessarily imply that it was in writing; yet, that the decrees of every civilized nation, in relation to the disposition or sale of property, must be presumed to be in writing, unless the contrary appears. If, however, it was proved, that this particular decree, or that the decrees of the government generally, in relation to American cargoes carried to Havana during the embargo, were not in writing, evidence of the purport of those decrees or orders, taken in a proper manner, might be received; or, if it appeared that the officer who gave this certificate, would not be permitted by the government, at Havana, to give a deposition, inferior evidence, in that case, would be received; but no such proof is made in this case.

PETERS, District Judge, gave no opinion

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

on this last point, and doubted whether the court ought to presume, that the decree was in writing. The certificate was rejected.

WASHINGTON, Circuit Justice, (charging jury.) The plaintiff having committed an acknowledged deviation, by returning to Havana instead of pursuing his voyage to New-Orleans, he cannot expect to recover, in this action, without satisfying you by clear and unexceptionable evidence, that he had a justifiable cause for departing from the regular course of the voyage insured.

If the necessity produced by the want of water, which is stated by the mate, really and fairly existed, a sufficiency for the voyage having been taken in at New-York—if there was not enough remaining, to supply the wants of the crew to New-Orleans, and Havana was the nearest port, or one which could be most easily gained, at which water could be obtained, then, the deviation was excusable. But, it appears extremely difficult to account for the deficiency in this article. which occasioned the return of the vessel to Havana. The mate says, that the daily expenditure did not exceed five gallons, which, in thirty days, would amount to not more than about about one-sixth of the quantity said to have been taken in at New-York; and adding to that the quantity which is proved to have been lost by leakage, more than one-half ought to have remained at the time when the deviation took place. Whether this quantity also leaked out, leaving only thirty gallons, or was unfairly disposed of, you must decide from all the circumstances of the case. But suppose the excuse for the return to Havana, sufficiently made out, still, it was the duty of the insured to pursue the voyage to New-Orleans, as soon as a supply of water was obtained at Havana, if it was in his power to do so. The mate has stated, that soon after the vessel arrived at that place, she was ordered into the port, and a custom-house officer was put on board, who said that the vessel would not be permitted to depart, without landing and disposing of her cargo. That the captain complained to the officer of his detention, and that the cargo was landed by the custom-house officers. But, it by no means appears, that the detention, the landing, and the sale of the cargo, were by the orders of the government, or that the captain applied for leave to depart, and was prevented. Such evidence, (for aught that appears to the court,) might have been obtained; and as it behooves the plaintiff to give you entire satisfaction that the stay at Havana was compulsory, it is for you to decide, whether this is afforded by the testimony of the mate. It is proved that this cargo, which consisted principally of paper, with some other articles, such as capers, olives, anchovies, vermicelli, raisins, almonds, soap. claret wine, butter, and boards, was equally well fitted for the New-Orleans and the Havana markets. Of course, this circumstance is entitled to some weight, in repelling a suspicion, that a deviation was originally contemplated by the owner. But, at the same time, it is not easy to discover any strong temptation in the Spanish government, to violate the rights of hospitality, due to a friendly nation, by detaining such a cargo; and. this circumstance strengthens the claim of the defendants upon the insured, to make out this part of his case by unexceptionable evidence.

Verdict for defendants.